IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FLEET SYSTEMS, INC., | ) |
| Plaintiff, | ) 8:07CV08 |
| v. | ) MEMORANDUM OPINION |
| FEDERAL COACH, LLC, | ) |
| Defendant. | ) |

This matter is before the court after a hearing on plaintiff Fleet Systems. Inc.'s ("Fleet's") motion for a temporary restraining order. This is an action for breach of contract, tortious interference with a business relationship and violations of the Arkansas Motor Vehicle Commission Act. Ark. Code Ann. § 23-112-403 ("AMVCA"). Plaintiff Fleet Systems, Inc., (hereinafter, "Fleet " or "the dealer") sells new and used motor vehicles, specializing in sales of hearses and limousines to the funeral industry. Defendant Federal Coach, LLC ("Federal Coach" or "the Company") manufactures funeral vehicles. This action was originally filed in state court, but was removed pursuant to 28 U.S.C. § 1441. Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332.

A temporary restraining order was entered by the state court before this action was removed to federal court. See Filing No. 1, State Court Pleadings, Order dated December 28, 2006. After a telephone conference with the parties, this court ordered that the state court TRO, which was to have expired on January 5, 2007, remain in force pending a TRO hearing in this court. Filing No. 8. A hearing was held on January 8, 2007.

Fleet moves for entry of an order protecting its interests pending resolution of its claim. Federal Coach objects to preliminary relief and moves for leave to conduct

expedited discovery to respond to Fleet's motion for a preliminary injunction. Federal Coach also contends that Fleet should furnish a bond in the event injunctive relief is ordered. Both parties agree that sixty days is sufficient for discovery. The court has scheduled a hearing on preliminary injunctive relief in early March. Accordingly, the issue presently before the court is limited to the propriety of temporary injunctive relief until Fleet's motion for a preliminary injunction can be fully heard.

I.   BACKGROUND

The evidence presented to the court shows Fleet and Federal Coach entered into an agreement on November 24, 1992 for a term of one year. See Filing No. 12, Exhibit List, Hearing Exhibit ("Hr'g Ex.") 1. The agreement provided for Fleet's purchase of vehicles manufactured by Federal Coach for resale. Hr'g Ex. 1, §I, ¶ A. The agreement set forth rights, responsibilities and procedures in connection with the purchase and sale of the vehicles. *Id.* It provided that "the territory described in the Addendum hereto attached shall be considered Dealer's effective sales area only so long as effective and adequate sales and service representation is maintained therein, (2) resultant volume of sales is reasonably comparable to historical performance based on the market in said area." *Id.,* § I, ¶ A. Fleet's effective sales territory was Nebraska, Southern Iowa, South Dakota and Wyoming. *Id.,* Addendum. The contract further provided that "if dealer chooses to represent, sell, or advertise products manufactured by companies other than Federal, Federal reserves the right to assign additional Dealers within the particular sales area described in the attached addendum. *Id.,* § IV, ¶ D. The contract was automatically renewable "for additional one year terms unless either party gives written notice to the contrary on or before thirty days prior to the expiration of any term." *Id.*, § V, ¶ A. The

agreement could be terminated by the dealer at any time with thirty days' notice, but could be terminated by the Company only for cause. *Id.,* § V, ¶ B. The contract is governed by Arkansas law. *Id.* at § VI, ¶ C.

Fleet's President, William F. Dugan, testified at the TRO hearing. He testified that at the time the contract was first executed, Federal Coach knew that Fleet's primary customer base included members of several national funeral industry trade organizations. He further testified that over 90% of Fleet's annual sales were to customers outside the four-state sales territory specified in the agreement. *See also* Filing No.1, State Court Record, Application for TRO, Affidavit of William F. Dugan ("Dugan Aff."). Until December 2006, Federal Coach applied a dealer discount to the invoice price of each vehicle it sold to Fleet, reducing the actual net cost. *Id.;* Hr'g Exs. 2, 3. The amount of the discount was adjusted periodically and was applied to all Federal Coach dealers. Dugan Aff. at 2.

Dugan testified that Fleet always made the sales quota within its territory. He further testified that Fleet generally sells 50 to 60 vehicles per year, including 15-30 new vehicles that it purchases from Federal Coach. Dugan acknowledged that the number had been lower for the last two years, due to a lack of sales personnel. With respect to new vehicles, Fleet sells only those manufactured by Federal Coach. It has no agreements to distribute other manufacturer's products. The used cars that it sells are generally purchased as a trade-in for an new vehicle. Fleet's used car business is dependent on its new car business, which, in turn, is dependent on the relationships it has built over the years with customers nationwide. He stated that Fleet generally aimed at a margin of approximately $3000.00 per new vehicle.

3

In 2006, L.B. Poindexter & Co., Inc., an Ohio-based funeral vehicle manufacturer, purchased both Federal Coach and Eagle Coach Company, formerly Federal Coach's competitor. In April 2006, Dugan was told by a Federal Coach employee that Federal Coach was trying to restrict sales by dealers to territories. Dugan Aff. at 3. In May 2006, Dugan received correspondence for Mike Kellerman of Federal Coach reporting that a meeting had occurred in Nashville, Tennessee, and that discussions at the meeting included "New, Meaningful Dealer Contracts," "Dealer ownership of their individual territories," "Factory making guarantees not to sell into Dealer's territories if dealer meets requirements" "Incentives paid to Dealer territories, not selling Dealers" "New discount structure to reward both market share and total volume." Hr'g Ex. 3. at 1. Dugan testified that he was not invited to the meeting and had not attended the meeting.

In July 2006, Dugan received correspondence that referred to drafts of new Dealer contracts. Hr'g Ex. 4. In September 2006, he received a Sales Bulletin outlining Federal Coach's "Van Pricing and Dealer Programs." Hr'g Ex. 5. It provided that "[t]he 2007 pricing also includes the $4500 Territorial Marketing Commission, which will automatically be deducted upon invoicing, as long as the sale takes place within your assigned territory." *Id.* Dugan testified that since December 1, 2006, Federal Coach has refused to apply any discount to invoices for vehicles that Fleet sold outside Fleet's effective territory. *See also* Hr'g Exs. 8, 102 & 103.

On December 8, 2006, Federal Coach sent a new contract to Fleet for its signature. Hr'g Ex. 7. The contract provided for a Territorial Market Development Allowance "for each and every unit of the Product sold to a 'Retail customer' in the Dealer's territory to compensate Dealer for its promotional, service and facility maintenance expenses within

4

the territory." Hr'g Ex. 7 at 3. The same terms were included in the contracts provided to all dealers. Hr'g Ex. 104, Declaration of Randy Garner ("Garner Decl."). The proposed contract has not been executed.

Dugan testified that Fleet employs two full-time salesmen and one part-time bookkeeper or administrator. Its salesmen are paid straight commission. He testified that his salesmen are likely to quit under the terms of the proposed contract. He further testified that he had seven new vehicle sales presently in the works, but has been unable to finalize the sales due to uncertainty in Federal Coach's pricing of the vehicles.

II.  DISCUSSION

In diversity jurisdiction cases, this court evaluates a motion for preliminary injunctive relief in accordance with Rule 65 of the Federal Rules of Civil Procedure and federal instead of state law. *Modern Computer Sys., Inc., v. Modern Banking Sys., Inc.,* 871 F.2d 734, 737 n.5 (8th Cir. 1989) (en banc) (federal law governs all procedural issues in federal courts, regardless of the basis of jurisdiction). The extraordinary remedy of a preliminary injunction should not be granted unless the movant has demonstrated: (1) the threat of irreparable harm to it; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that it will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113-14 (8th Cir.1981) (en banc).

Rule 65(d) requires that any injunction or restraining order be "specific in terms" and describe "in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). Further, under Fed. R. Civ. 65(c), a bond is required to ensure recourse to a defendant who has been wrongfully

enjoined. *See W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 770 n.14 (1983). Security should be imposed "in an amount that fairly protects the [defendants] should it be ultimately found that the [defendants] [have] been wrongfully enjoined." *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 373 (8th Cir. 1991).

In applying *Dataphase*, no single factor is determinative, although the failure to demonstrate the threat of irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. *See Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir. 1996); *see also Modern Computer Sys., Inc.,* 871 F.2d at 738; *Glenwood Bridge,* 940 F.2d at 371 (characterizing threat of irreparable harm as a threshold inquiry). The burden is on the movant to prove irreparable harm and failure to sustain that burden "ends the inquiry" and a denial of injunctive relief is warranted. *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 420 (8th Cir.1987). In cases involving the termination of a distributorship, franchise or unique product line, such irreparable harm can be shown, for example, by evidence that a distributor would be "possibly forced out of business. " *Ryko Mfg. Co. v. Eden Servs.*, 759 F.2d 671, 673 (8th Cir. 1991) (affirming injunctive relief on a showing that the distributor's business would be destroyed by termination of distributorship agreement that accounted for ninety-five percent of its business and the distributor would be unable to finance the litigation). *See also Modern Computer Sys. v. Modern Banking Sys., Inc.,* 871 F.2d at 737 (rejecting claim of irreparable harm for lack of evidence that distributor would be "pushed to the brink of extinction (with irreparably damaged goodwill and reputation) absent injunctive relief," where there was evidence that the distributor had a substantial customer base and other significant sources of revenue);

*Watkins Inc. v. Lewis,* 346 F.3d 841, 846-47 (8th Cir. 2003) (distinguishing a dealership relationship "that builds up good will and a reputation for reliability" from that involving an independent contractor or commissioned salesperson).

The loss of an ongoing business "cannot be fully compensated by subsequent monetary damages" and "is not measurable entirely in monetary terms." *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir. 1995). The threatened loss of a business makes damages difficult to quantify at trial. *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 37-38 (2d Cir. 1995) (noting that granting injunctive relief in such circumstances "is necessary to avoid the unfairness of denying an injunction to a plaintiff on the ground that money damages are available, only to confront the plaintiff at a trial on the merits with the rule that damages must be based on more than speculation").

In determining the movant's likelihood of success on the merits, the court does not decide whether the movant will ultimately win. *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 371 (8th Cir.1991); *See O'Connor v. Peru State College*, 728 F.2d 1001, 1002 (8th Cir. 1984) (stating that because the proceedings are at an early stage, "to prejudge the evidence before it is fully collated and demonstrated is basically unfair." Probability of success on the merits is meaningless in isolation, but must be considered in the context of other factors, especially the threat of irreparable harm. *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d at 371.

The irreparable harm inquiry focuses on the harm or potential harm the defendant's conduct or threatened conduct will inflict on the plaintiff. *Dataphase,* 640 F.2d at 114. In contrast, the balance of harm analysis examines the harm of granting or denying the

injunction upon both of the parties to the dispute and upon other interested parties, including the public. *Glenwood Bridge,* 940 F.2d at 372. "A court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1179 (8th Cir. 1998).

The final factor in the *Dataphase* analysis is the impact of granting or denying the preliminary injunction upon the public interest. *Dataphase,* 640 F.2d at 114. The relationship between a dealer or distributor and a vehicle manufacturer is the subject of statutory regulation. *See, e.g.,* the Federal Automobile Dealers Franchise Act, 15 U.S. 1221, *et seq.*; the Arkansas Motor Vehicle Commission Act, Ark. Code Ann. § § 23-112-103 to 23-112-509. Those statutes were enacted to redress "the unequal bargaining power between the manufacturer and the dealer and the abuses therefrom." *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp.,* 533 F.2d 510, 515 (10th Cir. 1976);  (regarding federal act); *Kotula v. Ford Motor Co.,* 338 F.2d 732, 733 (8th Cir. 1964);  (noting federal act "was designed to supplement the anti-trust laws of the United States 'in order to balance the power now heavily weighted in favor of automobile manufacturers'"); *State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 413 (10th Cir. 1984) (ascribing same purpose to state enactments).

The AMVCA is a regulatory statute governing the relationships not only between dealers and manufacturers, but also salespersons, lessors/lessees, distributors and their representatives, factories and their representatives, and others in the motor vehicle industry. *Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.,* 374 F.3d 701, 716 (8th Cir.

2004), *reversed on other grounds,* 2006 WL 1445719 (U.S. 2006). The AMVCA empowers the Commission to set professional standards and grant and revoke licenses. *Id.* The AMVCA specifically allows for courts "to award damages and attorney fees to a licensee harmed by willful violations of the statutory scheme." *Id.*; Ark. Code Ann. § 23-112-105. It gives "persons or entities harmed by a violation of the statutes the right to sue in court, and at least one purpose of the overall system seems to be to protect authorized dealers who sell new and used vehicles from manufacturers of such vehicles." *Id.*

III.  ANALYSIS

In applying the *Dataphase* factors, the court first finds that Fleet has shown irreparable harm that warrants granting of preliminary injunctive relief at least until the motion can be heard on the merits. Fleet Systems has presented evidence that shows that without the injunction it will be on the brink of extinction. Because the loss of an established business results in nonmonetary, intangible harm, such as loss of goodwill, a damage remedy is not adequate to redress the potential injury to Fleet.

Fleet has also shown probability of success on the merits, at least with respect to its breach of contract claim. Without addressing the potential success of claims that extend beyond the one-year term of the contract, the court finds that Fleet has shown probable success on its claim that the contract in force in 2006 was automatically renewed by its terms when Federal Coach did provide written notice of its intention not to renew that contract thirty days before the contract was to have expired on November 24, 2006. Federal Coach's unilateral change in its dealer discount allowance practices, by whatever name, effectively worked a material change in the contract's terms. Federal Coach's proposed award of "Territorial Marketing Development Allowances" to dealers for sales within a particular territory effectively transformed Fleet's contract from a non-exclusive

9

territorial distribution agreement to an exclusive territorial distributorship agreement. The probability of success on Fleet's other claims remains to be developed.

In balancing the harm of granting the injunction, the court finds the potential harm to Fleet outweighs that of Federal Coach. Federal Coach can more easily withstand a short-term loss of revenue and the requirement of a bond will protect Federal Coach against wrongful enjoinder. The public interest also weighs in favor of granting an injunction to Fleet. Without expressing an opinion on the applicability of the AMVCA or on Fleet's probability of success on that claim, the court notes that the relationship between the parties is analogous to that of a franchise, distributorship or dealership. The public interest in protection of parties with unequal bargaining power is embodied and articulated in legislative enactments that regulate these relationships. Accordingly, the court finds a temporary injunction should be issued. The injunction will require that the contract, Ex. A to plaintiff's complaint, be continued in force until further order of the court. The contract shall be performed in accordance with the parties' prior practice, that is, a dealer discount in an amount comparable to that applied to invoices governed by the 2006 contract and no sales specific territorial marketing assessments shall be applied to all of Fleet's sales. A bond in the amount of $31,500.00 will be sufficient to protect any potential injury to Federal Coach in the interim. An injunction in accordance with this Memorandum Opinion will issue this date.

DATED this 17th day of January, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge