# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **FLEET SYSTEMS, INC.,** ) | |
| ) | **8:07CV08** |
| **Plaintiff,** ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| **FEDERAL COACH, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

This matter is before the court on the plaintiff's Motion to Compel (Filing No. 71). The plaintiff filed a brief (Filing No. 72) and a SEALED[1] index of evidence (Filing No. 73). The defendant filed a brief (Filing No. 78) and an index of evidence (Filing No. 79) in opposition to the plaintiff's motion. The plaintiff filed a brief (Filing No. 81) and a SEALED index of evidence (Filing No. 82) in reply. In response to the plaintiff's reply, the defendant filed a Motion to Strike Filing No. 81 for Failure to Comply with NECivR 7.1 (Filing No. 83) and a brief (Filing No. 84) in support of the motion. On the record before the court it appears the parties made good faith attempts to resolve the parties' discovery dispute without court involvement. **See** Fed. R. Civ. P. 37; NECivR 7.1(i). The parties' motions and respective arguments will be address below.

## BACKGROUND

This is an action for breach of contract, tortious interference with a business relationship and violations of the Arkansas law regarding good faith dealing. **See** Filing No. 22 - Amended Complaint. The plaintiff sells new and used motor vehicles, specializing in sales of hearses and limousines in the funeral industry. *Id.* The defendant manufactures

---

[1] Pursuant to the protective order (Filing No. 30) and NECivR 5.3 the plaintiff's sealed filings (Filing Nos. 73 and 82) will be re-designated as restricted access. Such filings shall remain confidential, however the designation shall be changed from "SEALED" - access restricted to court users and the filing party, to "RESTRICTED" - access restricted to court users and all attorneys of record. The manner of filing, as sealed, prevented counsel for the defendant to have either electronic notice or electronic access to filings. Any prejudice to the defendant by the plaintiff's error may be discussed by counsel with Chief Judge Joseph F. Bataillon during the upcoming hearing.

funeral vehicles.  *Id.* ¶ 6.  The defendant distributes the funeral vehicles it manufactures using a network of independent funeral vehicle dealers, one of which is the plaintiff.  *Id.* ¶ 8.

The court determined the following relevant factual background in conjunction with the previous injunction proceedings.

> [The parties] entered into an agreement on November 24, 1992 for a term of one year.  The agreement provided for Fleet's purchase of vehicles manufactured by Federal Coach for resale.  The agreement set forth rights, responsibilities and procedures in connection with the purchase and sale of the vehicles.  It provided that "the territory described in the Addendum hereto attached shall be considered Dealer's effective sales area only so long as effective and adequate sales and service representation is maintained therein, (2) resultant volume of sales is reasonably comparable to historical performance based on the market in said area."  Fleet's effective sales territory was Nebraska, Southern Iowa, South Dakota and Wyoming.  The contract further provided that "if dealer chooses to represent, sell, or advertise products manufactured by companies other than Federal, Federal reserves the right to assign additional Dealers within the particular sales area described in the attached addendum . . . .
>
> Fleet's President, William F. Dugan, testified at the TRO hearing . . . that at the time the contract was first executed, Federal Coach knew that Fleet's primary customer base included members of several national funeral industry trade organizations.  He further testified that over 90% of Fleet's annual sales were to customers outside the four-state sales territory specified in the agreement.  Until December 2006, Federal Coach applied a dealer discount to the invoice price of each vehicle it sold to Fleet, reducing the actual net cost.  The amount of the discount was adjusted periodically and was applied to all Federal Coach dealers.
>
> Dugan testified that Fleet always made the sales quota within its territory.  He further testified that Fleet generally sells 50 to 60 vehicles per year, including 15-30 new vehicles that it purchases from Federal Coach.  Dugan acknowledged that the number had been lower for the last two years, due to a lack of sales personnel.  With respect to new vehicles, Fleet sells only those manufactured by Federal Coach.  It has no agreements to distribute other manufacturer's products.  The used cars that it sells are generally purchased as a trade-in for

a new vehicle. Fleet's used car business is dependent on its new car business, which, in turn, is dependent on the relationships it has built over the years with customers nationwide. He stated that Fleet generally aimed at a margin of approximately $3000.00 per new vehicle.

In 2006, L.B. Poindexter & Co., Inc., an Ohio-based funeral vehicle manufacturer, purchased both Federal Coach and Eagle Coach Company, formerly Federal Coach's competitor. In April 2006, Dugan was told by a Federal Coach employee that Federal Coach was trying to restrict sales by dealers to territories. In May 2006, Dugan received correspondence for Mike Kellerman of Federal Coach reporting that a meeting had occurred in Nashville, Tennessee, and that discussions at the meeting included "New, Meaningful Dealer Contracts," "Dealer ownership of their individual territories," "Factory making guarantees not to sell into Dealer's territories if dealer meets requirements" "Incentives paid to Dealer territories, not selling Dealers" "New discount structure to reward both market share and total volume." Dugan testified that he was not invited to the meeting and had not attended the meeting.

In July 2006, Dugan received correspondence that referred to drafts of new Dealer contracts. In September 2006, he received a Sales Bulletin outlining Federal Coach's "Van Pricing and Dealer Programs." It provided that "[t]he 2007 pricing also includes the $4500 Territorial Marketing Commission, which will automatically be deducted upon invoicing, as long as the sale takes place within your assigned territory." Dugan testified that since December 1, 2006, Federal Coach has refused to apply any discount to invoices for vehicles that Fleet sold outside Fleet's effective territory.

On December 8, 2006, Federal Coach sent a new contract to Fleet for its signature. The contract provided for a Territorial Market Development Allowance "for each and every unit of the Product sold to a 'Retail customer' in the Dealer's territory to compensate Dealer for its promotional, service and facility maintenance expenses within the territory." The same terms were included in the contracts provided to all dealers. The proposed contract has not been executed.

**See** Filing No. 18 p. 2-5 (internal citations omitted).

A temporary restraining order was entered by the state court before this action was removed to federal court. **See** Filing No. 1, State Court Pleadings, Order dated December

28, 2006.  Based on the above-described factual background, on January 17, 2007, Chief Judge Joseph F. Bataillon entered a temporary restraining order:  (1) enjoining the defendant from terminating, cancelling, or altering the terms of the parties' Agreement dated November 24, 1992; and (2) requiring the defendant to continue the customs, practices and course of dealing that it applied to the 2006 Agreement, including applying a dealer discount to all sales of the defendant's vehicles to the plaintiff in an amount comparable to that applied to invoices governed by the 2006 contract without any sales-specific territorial marketing assessments applied to the plaintiff's sales.  **See** Filing Nos. 18 and 19.  On February 15, 2007, the defendant filed an interlocutory appeal of the temporary restraining order.  **See** Filing No. 23.  On May 9, 2007, the court entered a temporary injunction adhering to its earlier findings.  **See** Filing Nos. 53 and 54.  On July 9, 2007, the defendant filed an interlocutory appeal of the temporary restraining order, which appeal was consolidated with the earlier appeal.  **See** Filing No. 74.  The appeal has not yet been heard by the Eighth Circuit Court of Appeals.  The parties are scheduled for a hearing, on August 10, 2007, before Chief Judge Joseph F. Bataillon regarding the injunction.  **See** Filing No. 58.

The plaintiff served the defendant with Requests for Production on January 26, 2007.  **See** Filing No. 73, Exhibit A.  On February 26, 2007, the defendant served its responses and objections.  *Id.* Exhibit B.  The parties conferred regarding the objections in May and June 2007.  **See** Filing No. 73 - Davidson Aff. ¶ 2.  On July 2, 2007, the plaintiff filed the instant motion to compel supplemental responses to Request for Production Nos. 1-9.  **See** Filing No. 71.  The plaintiff asks the court to compel such responses in sufficient time for the plaintiff to review the additional discovery before the August 10, 2007 hearing. **See** Filing No. 72 p. 2.  Request for Production Nos. 1-4 seek:  All documents from January 2002 to the present, including communications and e-mail messages to or from any person or dealership, (1) mentioning Fleet, Fleet's advertising, Fleet's pricing, or Fleet's vehicle orders; (2) mentioning Bill Dugan or other Fleet employees; (3) mentioning or relating to "out-of territory" sales by Federal dealers, including Fleet; and (4) mentioning or relating to Federal dealer "sales areas" or sales territory restrictions.  **See** Filing No. 73, Exhibit A.  The remaining disputed requests are as follows:

> REQUEST FOR PRODUCTION NO. 5: All documents from January 1997 to the present, including communications and e-mail messages to or from any person or dealership, mentioning or relating to territorial allowances, territorial restrictions, or territorial pricing, including the "Territorial Marketing Commission" referred to in Exhibit E to the Complaint and the "Territorial Market Development Allowance" referred to in Section 6 of Exhibit H to the Complaint.
>
> REQUEST FOR PRODUCTION NO. 6: All documents from January 2002 to the present, including communications and e-mail messages to or from any person or dealership, mentioning or relating to the price reduction applied to vehicle orders on the "dealer discount" line of Federal invoices, regardless of the name by which the price reduction is known, including "allowance."
>
> REQUEST FOR PRODUCTION NO. 7: All invoices for Federal vehicles scheduled to be delivered on or after December 1, 2006, to dealers other than Fleet and/or customers other than Fleet customers.
>
> REQUEST FOR PRODUCTION NO. 8: All documents, including communications and e-mail messages, relating to the development and drafting of the "Dealer Agreement" attached as Exhibit H to the Complaint.
>
> REQUEST FOR PRODUCTION NO. 9: All documents relating to the "Territorial Marketing Commission" referred to in Exhibit E to the Complaint and the "Territorial Market Development Allowance" referred to in Section 6 of Exhibit H to the Complaint.

**See** Filing No. 73, Exhibit A.

In response to these requests, the defendant generally provided "non-privileged and non-work product responsive documents relating to Fleet that were generated after January 1, 2006." *Id.* Exhibit B. Specifically, in response to Request for Production No. 3, the defendant also provided responsive documents as related to "other Federal dealers" on orders placed from January 17, 2007 (the date of the temporary injunction) to the present. *Id.* Otherwise, the defendant objected to each request as overly broad, unduly burdensome and as seeking documents which are not relevant or are protected by an

attorney-client or work-product privilege.  ***Id.***[2]  The plaintiff states it offered to narrow the temporal scope of certain requests to the time period after 2004, without a favorable response.  **See** Filing No. 72 p. 5.

## ANALYSIS

With regard to production of documents and things, Fed. R. Civ. P. 34(b) provides:

> The party upon whom the request is served shall serve a written response within 30 days after the service of the request. . . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

**See** Fed. R. Civ. P. 34(b).

"All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden."  ***Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton***, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted).  Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence.  **See** Fed. R. Civ. P. 26(b)(1).  Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978).  Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no

---

[2] To the extent the defendant made other objections in its response, the defendant did not argue such objections continued to be applicable in its brief in opposition to the motion to compel.  Accordingly, such objections are deemed waived.

possible bearing on the subject matter of the action.  See *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 86 (D. D.C. 2005).  Typically, the burden is on the party resisting discovery to explain why discovery should be limited given that the Federal Rules allow for broad discovery.  See *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004).  However, the proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required.  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993).  Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case.  See *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972).

The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper.  *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections).  Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient to bar production.  *Id.*  "The party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive."  *Id.* (citations omitted).  The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.  See *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001).  This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents.  See *id.*  The District Court "enjoys considerable discretion over discovery matters" and may limit the scope of discovery, if it has a good reason to do so. *Burlington Ins.*, 368 F. Supp. 2d at 86.  The parties do not argue the merits of each individual request, but generally dispute the relevance, overbreadth and burden related to the group of requests as a whole.  The only exception is as to Request for Production Nos. 6-7, which will be discussed in additional detail.

## A.   Relevance

The plaintiff argues that after a long-standing contract and course of dealing, the defendant sought to restrict the plaintiff's sales territory to favor other dealers and to damage the plaintiff's ability to make extra-territorial sales.  The plaintiff alleges other dealers complained about the plaintiff leading to the defendant's attempt to change the parties' contract and restrict discounts formerly given to the plaintiff on vehicles sold outside a limited territory.  Based on these arguments, the plaintiff contends the pleadings support the relevance of discovery prior to 2006.  The plaintiff specifically relies on the history of the parties' contractual relationship, the defendant's change in ownership, complaints about the plaintiff made by other dealers, and the change in treatment of the plaintiff by the defendant.  Further, the plaintiff contends the court should not make additional temporal limitations on discovery because the defendant relies on documents dating to the beginning of the parties' relationship.  The plaintiff also provides evidence of documents dated in September 2005, which relate to territorial sales and the new 2006 dealer agreements. The plaintiff contends that with regard to Request for Production Nos. 6 and 7, the plaintiff seeks other dealer invoices only since December 1, 2006, and other documents showing discounts given to other dealers as evidence of the defendant's differential treatment of plaintiff.  The plaintiff contends such documents would show the defendant intends to favor the other dealers and run the plaintiff out of business.  Finally, the plaintiff asserts the defendant failed to provide a privilege log for any undisclosed, yet privileged, documents.

The defendant contends the plaintiff's requests seek irrelevant documents in an attempt to search for new claims, since the purpose behind the August 10 hearing is to determine the validity of the current preliminary injunction after the November 24, 2007 expiration of the parties' contract.  The defendant argues the federal rules specifically preclude the plaintiff from obtaining discovery which is not relevant to current claims and defenses, in an attempt to search for new claims.  The defendant argues the plaintiff's requests relate to a change in treatment of the plaintiff, which never occurred, and only events from the year 2006 to the present.  The defendant states that, as it is worded, Request for Production No. 6 would require discovery about every sale to any dealer since 2002, which could not possibly be relevant to any claim or defense pleaded in this matter.

The defendant explains the older documents it has relied upon are related only to the plaintiff's relationship with the defendant, rather than other dealers.

The plaintiff has met its threshold burden of showing how the requested discovery, with additional time limitations, is relevant to claims or defenses raised in this case. Specifically, the plaintiff has shown the potential relevance of the documents requested in Request for Production Nos. 1-5 and 8-9, in the year 2005 to the present. The plaintiff should be allowed discovery about information leading to the decisions made in 2006 and has shown such information is likely to exist in documents created in 2005. At this time, the plaintiff has failed to make a showing that documents created in the years prior to 2005 are similarly reasonably calculated to lead to the discovery of admissible evidence. The plaintiff has also met its threshold burden of showing how Request for Production No. 6 is relevant, with additional limitations, to claims or defenses raised in this case. Request for Production No. 6, as written would be duplicative of Request for Production No. 7, which was otherwise limited by the plaintiff. Therefore, the court will further limit the request to documents other than invoices. The plaintiff has also met its threshold burden of showing how Request for Production No. 7 is relevant to claims or defenses raised in this case, without limiting the request to the date of the entry of the January 17, 2007 temporary restraining order. Accordingly, the plaintiff's request will not be so limited. The defendant fails to show principled justification for additionally narrowing the requests or for refusal to permit the discovery sought on the basis of relevance.

### B.     Overbreadth and Undue Burden

The defendant contends the plaintiff's requests are overly broad and production, as requested, would cause the defendant an undue burden in terms of cost and effort. The defendant argues the burden of production is overshadowed by any potential importance of the discovery sought. Specifically, the defendant states it has already produced over 7000 pages of documents, production of the unproduced requested documents could take one week because such documents are kept in off-sight, unlabeled or poorly labeled boxes, and may contain thousands of pages. **See** Filing No. 79. The defendant's poor maintenance of its files does not relieve it of the burden of production. In fact, none of the

defendant's contentions bar the plaintiff's discovery particularly in light of the court's narrowing of the requests as discussed above.

Accordingly, the defendant shall supplement its responses to the plaintiff's Request for Production Nos. 1-5 and 8-9, to include responsive documents created on or after January 1, 2005; the plaintiff's Request for Production No. 6, to include responsive documents created on or after December 1, 2006; and Request for Production No. 7, to include responsive documents (other than invoices) created on or after January 1, 2005. Under the circumstances here, the court declines to award sanctions to either party based on the instant discovery dispute. **See** Fed. R. Civ. P. 37(a)(4)(C). Upon consideration,

### IT IS ORDERED:

1. The plaintiff's Motion to Compel (Filing No. 71) is granted in part, and denied in part. The defendant shall supplement its responses to the plaintiff's Request for Production Nos. 1-5 and 8-9, to include responsive documents created on or after January 1, 2005; the plaintiff's Request for Production No. 6, to include responsive documents created on or after December 1, 2006; and Request for Production No. 7, to include responsive documents (other than invoices) created on or after January 1, 2005.

2. The defendant shall have to **on or before the close of business on August 8, 2007**, to supplement its responses as described above.

3. The defendant filed a Motion to Strike Filing No. 81 for Failure to Comply with NECivR 7.1 (Filing No. 83) is denied. However, the court relied only on facts supported by the record.

4. The Clerk of Court shall change the designation of Filing Nos. 73 and 82 from "SEALED" to "RESTRICTED" pursuant to Protective Order (Filing No. 30) and NECivR 5.3.

Dated this 6th of August, 2007.

                                          BY THE COURT:

                                          s/Thomas D. Thalken
                                          United States Magistrate Judge